IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THERESA E. WILLIS,

    Plaintiff,

v.                                                              Civil Action No.: _____

TRUIST BANK,
    **SERVE:**    **Registered Agent**
                     **CT Corporation System**
                     **4701 Cox Road, Suite 285**
                     **Glen Allen, VA 23060**

    Defendant.

                                                                      **JURY TRIAL**
                                                                      **DEMANDED**

## **COMPLAINT**

    The plaintiff Theresa E. Willis ("Ms. Willis"), by counsel, submits this Complaint against the defendant Truist Bank ("Truist"), for race discrimination and retaliatory discharge in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## PARTIES

    1. Ms. Willis is an African American female residing in the City of Richmond, Virginia.

    2. Truist Bank is believed to be incorporated in one of the United States, and conducts banking operations in the Commonwealth of Virginia, including the City of Richmond.

## JURISDICTION and VENUE

    3. This Court has subject matter jurisdiction over this matter based on 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(3) (violation of civil rights). Venue is proper in this District as it is the location of the defendant and the events complained of herein.

ALLEGATIONS

4. Ms. Willis commenced employment with Truist (then SunTrust Bank) in April 1987. Her last position was Assistant Vice President, and Team Manager. She last earned a salary of $54,000 annually, plus benefits.

5. Ms. Willis routinely received excellent performance evaluations during her many years of employment and was thus meeting her employer's expectations.

6. Ms. Willis managed a team of customer service representatives at SunTrust's Mortgage Division. For a time, Ms. Willis led one of three separate teams, under the supervision of Christopher Stevens, who resided in Florida. The number of teams was later reduced to two, one led by Ms. Willis, and the other led by Raquel Kelly. When Kelly took an extended medical leave of absence in March through September 2019, Ms. Willis led both teams, comprising 60 customer service representatives.

7. Supervising this many representatives proved incredibly difficult, given that in addition to managing and training employees, Ms. Willis frequently interviewed new candidates for employment, due to high turnover among representatives. During hiring "blitzes" in March through July 2019, for example, Ms. Willis interviewed nine candidates per day for weeks on end. The high turnover was a result of having new hires who were untrained and thus unprepared to adequately answer difficult mortgage customer escrow questions.

8. Stevens recognized the Ms. Willis handled her duties in a professional and exemplary fashion, as he promoted her to Assistant Vice President in June 2019. That promotion came, however, with no additional responsibilities or increased compensation.

9. In early 2019, Dawn Hendricks became group manager over customer service and Steven's manager. Hendricks was considered by many SunTrust Mortgage employees as being

racially biased against African Americans. Ms. Willis began to notice Stevens treating her harshly and in a more adversarial manner than he had previously. For instance, in March 2019, Ms. Willis sent Stevens a text message advising him she was leaving work early, and that another employee was covering for her. Stevens replied, "Are you asking me or telling me?" This upset Ms. Willis, as she had not been subjected to such treatment in the past and called Stevens to ask what he meant. Stevens responded that he did not understand why Ms. Willis was calling him.

10. This exchange prompted Ms. Willis to contact a woman in SunTrust's Human Resources Department named Patty. While Ms. Willis did not speak specifically of race discrimination, she was aware that Human Resources informed Stevens of her complaint. Soon thereafter, Stevens issued Ms. Willis a mid-range performance evaluation that resulted in a meager 0.75% raise instead of the 3% raise that she customarily received in the past.

11. In May 2019, Stevens and Hendricks came to the Richmond call center to conduct a focus group of customer service representatives. Ms. Willis received feedback from employees that Stevens and Hendricks were pushing them to make negative comments about her. Stevens later reported to Ms. Willis and Raquel Kelly that Kelly was "too hard" on teammates, and that Ms. Willis "didn't smile."

12. In August or September 2019, Timothy Bicha became the group manager over customer service, and Stevens' new supervisor. In early October 2019, Ms. Willis complained to Bicha that she was being subjected to race discrimination by Stevens. Bicha later had a ten-minute meeting with Ms. Willis in Richmond to discuss her accusations. Bicha told Ms. Willis that he would get back to her, but never did. Four hours later, however, Stevens called Ms. Willis

to see how thing were, which was unusual for him. It was apparent that Bicha had informed Stevens of Ms. Willis' complaint against him.

13. Ms. Willis took a medical leave of absence from November 3 – December 2, 2019. On the day that she returned to work (December 3, 2019) Stevens fired her. The reason given was that Ms. Willis supposedly approved by accident one day's pay for employee who had left the bank. However, no one from SunTrust approached Ms. Willis about the situation, or asked for an explanation. The termination was very humiliating and emotionally distressing for Ms. Willis.

14. Following Ms. Willis' dismissal, the 60-person team that she led for several months on her own was again divided into two teams, led by a white male and a black female respectively.

15. Ms. Willis was subjected to race discrimination and terminated in retaliation for complaining of race discrimination by Stevens to Bicha. Her dismissal violated the Civil Rights Act of 1866, 42 U.S.C. § 1981, which prohibits race discrimination and retaliation in contracts, including implied employment contracts.

16. This Act entitles the victim to past and future lost wages, plus damages for injury to her career and work record, emotional distress and inconvenience, and attorney's fees for pursuing her claim.

17. As a direct and proximate result of Truist's discrimination and retaliatory actions, Ms. Willis has suffered loss of income, mental and emotional distress, embarrassment, humiliation, inconvenience, and litigation expenses, including attorney's fees.

COUNT I
RACE DISCRIMINATION
IN VIOLATION 42 U.S.C. § 1981

18. By discriminating against Ms. Willis on account of her race, as alleged herein, Truist violated her rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

19. Ms. Willis' injuries under this Count entitle her to reinstatement to her former position, and an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for her humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to her career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit.

COUNT II
RETALIATORY DISCHARGE
IN VIOLATION OF 42 U.S.C. § 1981

20. By discharging Ms. Willis in retaliation for complaining to management about race discrimination, as described herein, Truist violated her rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

21. Ms. Willis' injuries under this Count entitle her to reinstatement to her former position, and an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for her humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to her career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit.

WHEREFORE, the plaintiff Theresa E. Willis demands judgment against the defendant Truist Bank, reinstating her position, and awarding her the sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) in compensatory and punitive damages; plus attorney's fees, costs of suit, and such other and further relief as this Court may deem just and proper.

Respectfully submitted,

THERESA E. WILLIS

By:   /s/ Scott G. Crowley
Scott Gregory Crowley
Virginia Bar No. 31216
Attorney for Theresa E. Willis
Crowley & Crowley, P.C.
4870 Sadler Road, Suite 300
Glen Allen, VA  23060
Tel.:  (804) 205-5010
Fax: (804) 205-5001
Email: scrowley@crowleyandcrowley.com